JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Scott Copeland and Shonda Corbert H/w individually and as p/n/g of Stephen Copeland | Nutribullet, LLC <br> Homeland Housewares, LLC |

**(b)** County of Residence of First Listed Plaintiff  Montgomery, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

J.B. Dilsheimer

Sean McMonagle

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury <br> ☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY** <br> ☒ 365 Personal Injury - Product Liability <br> ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 690 Other <br><br> **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Management Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br><br> **INTELLECTUAL PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated New Drug Application <br> ☐ 840 Trademark <br> ☐ 880 Defend Trade Secrets Act of 2016 <br><br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit (15 USC 1681 or 1692) <br> ☐ 485 Telephone Consumer Protection Act <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information Act <br> ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision <br> ☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Tite 28 Section 1332

Brief description of cause:
Diversity of Citizenship and amount in controversy exceeds $75,000

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____   DOCKET NUMBER _____

DATE  5/23/25

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: _Cheltenham  Montgomery  County, PA_

---

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                      Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?      Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?           Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.  Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☒ 16. All Other Federal Question Cases. *(Please specify):*_____

*B.  Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):*_____
☒ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☑ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SCOTT COPELAND,** | : | |
| **SHONDA CORBETT, H/W, individually** | : | |
| **and as parents and natural guardians of** | : | |
| **STEPHEN COPELAND, a minor,** | : | **NO.: _____** |
| **212 Parkview Road** | : | |
| **Cheltenham, PA 19012** | : | *Jury Trial Demanded* |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **NUTRIBULLET, LLC;** | : | |
| **11601 Wilshire Blvd, Suite 23** | : | |
| **Los Angeles, CA 90023** | : | |
| | : | |
| **And** | : | |
| | : | |
| **HOMELAND HOUSEWARES LLC;** | : | |
| **11601 Wilshire Blvd, Suite 23** | : | |
| **Los Angeles, CA 90023** | : | |
| | : | |
| **And** | : | |
| | : | |
| **CAPITAL BRANDS, LLC** | : | |
| **11601 Wilshire Blvd, Suite 23** | : | |
| **Los Angeles, CA 90023** | : | |
| | : | |
| | : | |
| **CAPITAL BRANDS** | : | |
| **DISTRIBUTION, LLC** | : | |
| **11601 Wilshire Blvd, Suite 23** | : | |
| **Los Angeles, CA 90023** | : | |
| | : | |
| **And** | : | |
| | : | |
| **NUTRILIVING LLC** | | |
| **11601 Wilshire Blvd, Suite 23** | | |
| **Los Angeles, CA 90023** | | |
| **Defendants.** | | |

## COMPLAINT (NUTRIBULLET/MAGIC BULLET BLENDER)



COMES NOW the Plaintiffs, Scott Copeland and Shonda Corbett, H/W, individually and personally, and as the natural parents and guardians of Stephen Copeland, a minor, by and through undersigned counsel, and hereby files this personal injury, product liability action against Defendants NutriBullet, LLC; Homeland Housewares LLC; Capital Brands, LLC; Capital Brands Distribution, LLC; and Nutriliving, LLC; (hereinafter collectively referred to as "NutriBullet Defendants"), and alleges and states as follows:

### PARTIES

1.    Plaintiff, Scott Copeland is an adult individual and resident of the Commonwealth of Pennsylvania residing at 212 Parkview Road, Cheltenham, PA 19012.

2.    Plaintiff, Shonda Corbett is an adult individual and resident of the Commonwealth of Pennsylvania and the wife of Plaintiff, Scott Copeland residing at 212 Parkview Road, Cheltenham, PA 19012.

2

3.      Plaintiffs, Scott Copeland and Shonda Corbett, are the parents and natural guardians of Stephen Copeland, a minor.

4.      Defendant NutriBullet, LLC is a business entity organized and existing under the laws of California, with its principal place of business located at the above captioned address and at all times material hereto, regularly conducted business in the Commonwealth of Pennsylvania and in Philadelphia.

5.      At all times hereto, Defendant NutriBullet, LLC is in the business of designing, developing, testing, manufacturing, distributing, marketing, labeling, warning, instructing, and selling compact design countertop electric blenders, including those under the NutriBullet and/or Magic Bullet brand names.

6.      At the time of the occurrence made the basis of this action, and for some time prior thereto, Defendant NutriBullet, LLC was qualified to do business and solicited for sale and sold its products, including the NutriBullet Magic Bullet Model: NB-201 blender (hereinafter referred to as the subject "NutriBullet Blender") involved in the incident made the basis of this Complaint.

7.      At all times hereto, Defendant Homeland Housewares LLC is a business entity organized and existing under the laws of California, with its principal place of business located at the above captioned address and at all times material hereto, regularly conducted business in the Commonwealth of Pennsylvania and in Philadelphia.

8.      Defendant Homeland Housewares LLC is in the business of designing, developing, testing, manufacturing, distributing, marketing, labeling, warning, instructing, and selling compact design countertop electric blenders, including those under the NutriBullet and/or Magic Bullet brand names.

3

9.    At the time of the occurrence made the basis of this action, and for some time prior thereto, Defendant Homeland Housewares, LLC was qualified to do business and solicited for sale and sold its products, including the NutriBullet Magic Bullet Model: NB-201 blender (hereinafter referred to as the subject "NutriBullet Blender") involved in the incident made the basis of this Complaint.

10.    Defendant Capital Brands LLC is a business entity organized and existing under the laws of California, with its principal place of business located at the above captioned address and at all times material hereto, regularly conducted business in the Commonwealth of Pennsylvania and in Philadelphia.

11.    At all times hereto, Defendant Capital Brands, LLC is in the business of designing, developing, testing, manufacturing, distributing, marketing, labeling, warning, instructing, and selling compact design countertop electric blenders, including those under the NutriBullet and/or Magic Bullet brand names.

12.    At the time of the occurrence made the basis of this action, and for some time prior thereto, Defendant Capital Brands, LLC was qualified to do business and solicited for sale and sold its products, including the NutriBullet Magic Bullet Model: NB-201 blender (hereinafter referred to as the subject "NutriBullet Blender") involved in the incident made the basis of this Complaint.

13.    Defendant Capital Brands Distributing, LLC is a business entity organized and existing under the laws of California, with its principal place of business located at the above captioned address and at all times material hereto, regularly conducted business in the Commonwealth of Pennsylvania and in Philadelphia.

4

14.    At all times hereto, Defendant Capital Brands Distribution, LLC is in the business of designing, developing, testing, manufacturing, distributing, marketing, labeling, warning, instructing, and selling compact design countertop electric blenders, including those under the NutriBullet and/or Magic Bullet brand names.

15.    At the time of the occurrence made the basis of this action, and for some time prior thereto, Defendant Capital Brands Distribution, LLC was qualified to do business and solicited for sale and sold its products, including the NutriBullet Magic Bullet Model: NB-201 blender (hereinafter referred to as the subject "NutriBullet Blender") involved in the incident made the basis of this Complaint.

16.    Defendant Nutriliving LLC is a business entity organized and existing under the laws of California, with its principal place of business located at the above captioned address and at all times material hereto, regularly conducted business in the Commonwealth of Pennsylvania and in Philadelphia.

17.    At all times hereto, Defendant Nutriliving, LLC is in the business of designing, developing, testing, manufacturing, distributing, marketing, labeling, warning, instructing, and selling compact design countertop electric blenders, including those under the NutriBullet and/or Magic Bullet brand names.

18.    At the time of the occurrence made the basis of this action, and for some time prior thereto, Defendant Nutriliving, LLC was qualified to do business and solicited for sale and sold its products, including the NutriBullet Magic Bullet Model: NB-201 blender (hereinafter referred to as the subject "NutriBullet Blender") involved in the incident made the basis of this Complaint.

## JURISDICTION AND VENUE

19.      Jurisdiction exists in this court pursuant to Title 28, Section 1332 of the United States Code (28 U.S.C. § 1332(a)) based upon the diversity of citizenship of the parties and the amount in controversy exceeds the sum of $75,000.00.

20.      Venue is proper in this court because all causes of action occurred within the Eastern District of Pennsylvania.

## STATEMENT OF THE FACTS

21.      All NutriBullet Blenders, including the one used by Plaintiffs, essentially have three components: a powered base unit which contains a high speed motor, a plastic bullet shaped container and a plastic lid mounted with metal blades which screws into the cup and is energized by the base.

22.      The NutriBullet is the successor to the original Magic Bullet upside-down counter-top blender and nutrient extractor.

23.      On or about July 16, 2023, Minor-Plaintiff, Stephen Copeland was using a 900 series NutriBullet Blender Model: NB-201.

24.      After it was operating for less than one minute blending cold ingredients to make a smoothie, Scott Copeland properly removed the cup from the motor base.

25.      Stephen's father, Scott Copeland, then attempted to remove the lid of the unit, when the cup and lid suddenly and without warning violently exploded, expelling scalding hot contents onto Plaintiffs' bodies, causing second degree burns to both Plaintiffs' bodies as depicted here:

**<u>SCOTT COPELAND'S BURN INJURIES:</u>**



**<u>MINOR STEPHEN COPELAND'S BURN INJURIES:</u>**



26.    As a direct and proximate result of the defective condition of the subject NutriBullet Blender, the Plaintiffs suffered severe, painful, permanent, and disfiguring burns to their upper extremities as well as emotional suffering from the bizarre, unexpected product explosion.

27.    At all material times hereto, the subject NutriBullet Blender was designed, developed, manufactured, tested, marketed, distributed, and sold by the NutriBullet Defendants.

28.    At the time of the occurrence made the basis of this lawsuit, the subject NutriBullet Blender was in substantially the same condition as it was when it was manufactured and sold by the NutriBullet Defendants.

29.    The NutriBullet Defendants aggressively marketed all models the NutriBullet Blender, including the subject NutriBullet-MagicBullet Blender, stating that it is the world's first Nutrition Extractor.

30.    The NutriBullet Blender chops, mixes, blends, whips, and grinds.  "Easy to Use: Just load your ingredients into the cup, twist on the blade, line up the tabs, and place on the power base."

31.    The NutriBullet Defendants tout and market that their bullet Blenders, including the subject blender, are safe and that that there is no risk if the NutriBullet Blender is used as directed.

32.    This statement is patently misleading and creates the false sense of security in consumers, including Plaintiffs, that the NutriBullet Blender is safe for its normal and intended use.

33.    Despite NutriBullet Defendants claims of "safety," they designed, manufactured, marketed, distributed and sold, both directly and through third-party retailers, a product that suffers

9

from defects in design and manufacturing which cause significant bodily harm and injury to its anticipated, foreseeable, and intended consumers, including the Plaintiffs herein.

34.    NutriBullet Blenders, including the subject blender, are defectively designed and manufactured with extremely fast moving blades which heat up the contents of the sealed bullet shaped canister, which can and does unexpectedly explode when being used in its normal and intended manner by consumers.

35.    Consumers use the NutriBullet Blender without the knowledge or warnings of the inherent risks.

36.    In a matter of seconds, the fast-spinning blades can heat up its contents, such that if the NutriBullet Blender explodes, the user is at risk of severe burns and injuries requiring medical attention, much like the Plaintiffs.

37.    At all material times hereto, the subject NutriBullet Blender was being used and operated for the purpose and in the manner for which it was designed and sold.

38.    The said NutriBullet Blender was not reasonably safe when being so used in a foreseeable manner but, to the contrary, was defectively and unreasonably dangerous when being so used.

39.    The Defendants knew, or in the exercise of reasonable care should have known, that said NutriBullet Blender was dangerous to the human body when being so used in a foreseeable and intended manner.

40.    Prior, substantially similar, exploding NutriBullet/MagicBullet blenders have caused similar burn injuries in countless other unsuspecting NutriBullet consumers nationwide and have spawned numerous complaints, avoidable injuries, and costly and time consuming litigation.

10

41.    The risks inherent in the subject NutriBullet Blender's unsafe, defective design outweigh its utility, particularly given the availability of feasible, inexpensive, safer alternative designs that would not impair the NutriBullet Blender's intended and expected functionality.

42.    As a direct and proximate result of the wrongful conduct of the NutriBullet Defendants, Plaintiff Scott Copeland suffered severe and permanent injuries, including burn injuries primarily to his to right upper extremity and other areas of Plaintiff's body.

43.    Plaintiff Scott Copeland seeks all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, punitive, and all other damages permissible under Pennsylvania law as a result of his injuries, all of which were proximately caused by the acts and omissions of the NutriBullet Defendants as herein described.

44.    As a direct and proximate result of the wrongful conduct of the NutriBullet Defendants, minor Plaintiff Stephen Copeland suffered severe and permanent injuries, including burn injuries primarily to both of his arms as depicted above in this Complaint, as well as to other areas of his body.

45.    Plaintiffs Scott Copeland and Shonda Corbett, on behalf of minor-Plaintiff Stephen Copeland, seek all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, punitive, and all other damages permissible under Pennsylvania law as a result of his injuries, all of which were proximately caused by the acts and omissions of the NutriBullet Defendants as herein described.

46.    Both Plaintiffs suffered and continue to suffer emotional harm from this incident.

11

47.     The NutriBullet Defendants have known of this defect for years and failed to warn its consumers that the product may explode a serious safety risk to users.

48.     The NutriBullet Defendants have and continue to conceal and fail to disclose the defective nature of the NutriBullet Blender.

49.     The NutriBullet Defendants failed to manufacture feasible, inexpensive, safety devices it knew or should have known about, such as a time and temperature interlocks to deactivate the device before its contents reach a certain internal, dangerous, scalding temperature.

50.     Despite knowledge from prior incidents, Defendants failed completely to do anything to make the instant product safe for continued expected and intended consumer use.

51.     Plaintiffs did nothing to cause or contribute to their injuries and damages, as they operated the instant blender as expected and intended.

## FACTS GIVIN RISE TO PUNITIVE DAMAGES

52.     The NutriBullet Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold, and placed the subject NutriBullet Blender into the stream of commerce.

53.     Before the incident made the basis of this Complaint, the NutriBullet Defendants were of the defects and dangerous conditions that existed with the Magic Bullet, as the Plaintiffs are not the first individuals to be horrifically injured by an exploding NutriBullet Blender and/or Magic Bullet.

54.     In fact, the NutriBullet Defendants are aware of multiple other incidents throughout the country similar to the foregoing matter, resulting in severe, permanent, disabling and disfiguring injuries to consumers, which it knew about before the subject incident took place.

12

55.     Despite being on notice of other incidents substantially similar to the foregoing matter, involving the same or similar products and the same or similar harm to consumers, the NutriBullet Defendants consciously and intentionally failed to take any proper action to warn, recall, remedy, or otherwise mitigate the risk of harm to the public generally, or Plaintiffs in particular from the use of its product.

56.     The NutriBullet Defendants had actual knowledge that the subject NutriBullet Blender posed severe danger and threat of serious injury to consumers, but did not warn or adequately inform or educate retailers, wholesalers or the public of said dangers, but instead, continued to sell the products for profit and allowed injuries to persist.

57.     The NutriBullet Defendants engaged in intentional misconduct when they put an unsafe product on the market without adequate testing; without a failure mode effect analysis for the production and design of the subject NutriBullet Blender; without quality controls in place for evaluating and testing the temperature of contents; or without testing being conducted to verify performance.

58.     The NutriBullet Defendants withheld information about their fraudulent conduct as NutriBullet Blenders began to fail, causing injury and death to consumers.

59.     The NutriBullet Defendants knew that their concealment and misrepresentations of said hazardous conditions and defects had a high probability of causing injury or damage because the defective NutriBullet Blenders remain in the stream of commerce and continue to be used by consumers who believed the product to be safe.

60.     The NutriBullet Defendants intentionally withheld information about the NutriBullet Blender defect from its customers to protect its profits.

13

61.     These acts and omissions of the NutriBullet Defendants show willful misconduct, malice, wantonness, oppression or that entire want of care which raise the presumption of conscious indifference to consequences.

## COUNT ONE

## SCOTT COPELAND, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF STEPHEN COPELAND, A MINOR, v. NUTRIBULLET DEFENDANTS

## STRICT LIABILITY

62.     Plaintiffs adopt and reallege the preceding paragraphs as if set forth fully herein.

63.     The NutriBullet Defendants designed, researched, developed, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the subject NutriBullet Blender.

64.     The NutriBullet Blender as designed, researched, developed, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed by the NutriBullet Defendants was in an unsafe and defective condition which was a known hazard to its users.

65.     The subject NutriBullet Blender was in this unsafe condition at the time it left the NutriBullet Defendants' possession.

66.     The subject NutriBullet Blender was expected to, and did, reach the usual consumers, including the Plaintiffs, and persons coming into contact with the NutriBullet Blender without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by the NutriBullet Defendants.

67.     The Plaintiffs were injured while using the subject NutriBullet Blender for its intended purpose, in accordance with the instructions that accompanied the product, and in a manner foreseeable to the NutriBullet Defendants.

14

68.     The subject NutriBullet Blender failed to perform safely and as reasonably expected and intended by an ordinary consumer.

69.     The NutriBullet Defendants are strictly liable pursuant to Section 402(a) of the Restatement of Torts, Second, as said product was defective and unreasonably dangerous at the time it was distributed and the Defendants failed to manufacture and design a safe product and failed to warn Plaintiffs, and other foreseeable users, of the aforementioned unsafe product defects and dangers.

70.     At all times relevant hereto, the subject NutriBullet Blender was defective and not fit for its intended purpose by design and/or manufacture because:

(a) The NutriBullet Blender failed to provide adequate and reasonable protection to and/or guarding against consumers during foreseeable use as it was designed in such a way that knowingly allowed the scalding contents of the NutriBullet Blender to be expelled during normal operation.

(b) The "User Guide" of the NutriBullet Blender failed to warn that the fast moving blades could heat up the contents in the Magic Bullet in a matter of seconds and explode causing injury to consumers, including the Plaintiffs during normal operation.

(c) The "User Guide" of the NutriBullet Blender alleges the Magic Bullet was safe when being used in a foreseeable manner but failed to advise the consumer of the potential for harm during normal operation.

(d)  The NutriBullet Blender was defective due to the NutriBullet Defendants' failure to test or adequately test the NutriBullet Blender and its parts to ensure they were reasonably safe and suitable for their intended purpose.

(e) The NutriBullet Blender was defective due to inadequate or absent warnings and/or proper notice to alert users regarding the hazardous conditions as described herein, involving its use and operation.

(f) At the time the NutriBullet Blender left the control of the NutriBullet Defendants, it could have adopted safer, practical, feasible and otherwise reasonable alternative designs that would have eliminated or minimized the defects without compromising the NutriBullet Blender's usefulness, practicality and desirability.

15

(g) The NutriBullet Blender was designed, manufactured, sourced, imported, distributed and/or sold in an unsafe and dangerous condition such that it had a propensity to cause its contents to be forcibly and unexpectedly expelled during normal and foreseeable conditions.

(h) The NutriBullet Blender was designed, manufactured, sourced, imported, distributed and/or sold in such a condition that it had a propensity to cause its contents overheat during the blending process, resulting in excess pressure under normal use and causing an explosion and injuries to consumers.

(i) The NutriBullet Blender lacked warnings to alert users of its dangers, including, but not limited to the danger of expulsion of contents.

(j) The NutriBullet Blender was designed and manufactured in such a way that it had a propensity to explode and burst under normal use.

(k) The NutriBullet Blender was generally defective in its design, manufacture, testing, assembly and warnings.

71.    The Defendants knew or should have known of these safety defects and failed to cure them, placing corporate profit over consumer safety.

72.    Plaintiffs and consumers, Scott and Stephen Copeland, were not reasonably aware of these product dangers and used the product as expected and intended by the Defendants.

73.    The dangerous nature of the defects herein described created a high probability that the subject NutriBullet Blender when put to its normal, intended and foreseeable use would cause or allow the hot contents of the unit to be expelled, resulting in severe and permanent person injuries to users of the subject NutriBullet Blender.

74.    The NutriBullet Defendants knew of this risk prior to production and marketing of the subject NutriBullet Blender and designed, manufactured, marketed and sold the subject NutriBullet Blender which caused the injuries complained of herein.

75.    The aforesaid defects were not known to the Plaintiffs and were not discoverable through reasonable inspection.

76.     The NutriBullet Defendants were in a position superior to that of the Plaintiffs to know and discover the aforementioned defects.

77.     The NutriBullet Defendants had actual or constructive and actual knowledge of said defects, yet failed to recall, repair, or warn about them.

78.     The risks inherent in the design of the subject NutriBullet Blender outweigh its utility.

79.     At the time and place of the occurrence made the basis of this lawsuit, the subject NutriBullet Blender was being used for its ordinary and intended and foreseeable purpose and in an ordinary intended and foreseeable manner, the Plaintiffs were foreseeable users of the subject NutriBullet Blender.

80.     The above-described defects in the subject NutriBullet Blender were the proximate cause of the severe burn injuries and damages suffered by the Plaintiffs Scott Copeland and minor Stephen Copeland.

**WHEREFORE,** Plaintiff Scott Copeland, individually, and as the parent and natural guardian of Stephen Copeland, a minor, demands judgment against Defendants, their agents, servants, borrowed servants, workmen and/or employees, jointly and/or severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, costs and such other further relief the Court shall deem appropriate.

### <u>COUNT TWO - NEGLIGENCE</u>

### <u>SCOTT COPELAND, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF MINOR-PLAINTIFF STEPHEN COPELAND, v. NUTRIBULLET DEFENDANTS</u>

81.     Plaintiffs adopt and reallege preceding paragraphs as if set forth fully herein.

17

82.     The NutriBullet Defendants were negligent in designing, manufacturing, assembling, testing, inspecting, labeling, distributing, marketing, and/or selling the subject NutriBullet Blender.

83.     The NutriBullet Defendants owed a duty they breached to design, manufacture, assemble, test, inspect, label, distribute, market, and sell a product free from defects in material and workmanship that is safe and functional for consumer use.

84.     At all times relevant hereto, the NutriBullet Defendants were negligent in at least the following respects in the design, manufacture, assembling, testing, inspecting, labelling, distributing, marketing, advertising, warning, and selling regarding the subject NutriBullet Blender:

(a) Improper design and/or manufacture the NutriBullet Blender by failing to provide adequate and reasonable protection to consumers during foreseeable use as the unit was designed in such a way that allowed the scalding contents of the subject NutriBullet Blender to be expelled during normal operation;

(b) Improper design and/or manufacture of the NutriBullet Blender which caused or allowed the contents to overheat during blending, causing pressure which resulted in the propensity for it to explode under normal use and spewing contents of the blender;

(c) Improper design and/or manufacture of the component parts resulting in the NutriBullet Blender failing to function properly resulting in hot contents being released during normal operation;

(d) Failure to test or adequately test the subject NutriBullet Blender and its parts to ensure they were reasonably safe and suitable for their intended purpose;

(e) Failure to provide reasonable and adequate warnings and/or proper notice to alert users regarding the hazardous conditions as described herein, involving its use and operation;

(f) Advertising and marketing claiming the NutriBullet Blender to be a reasonably safe leading consumers, including the Plaintiffs, to believe that it was reasonably safe for its intended purpose when it was not;

18

(g) Failure to adopt safer, practical, feasible and otherwise reasonable alternative designs that would have eliminated or minimized the defects without compromising the NutriBullet Blender usefulness, practicality and desirability;

(h) Improper design, manufacture, testing, assembly and warnings regarding the NutriBullet Blender;

(i) Failure to recall the NutriBullet Blender despite having actual or constructive knowledge of the dangers and hazards posed by it; and

(j) Placing profits ahead of consumer safety;

85.    The NutriBullet Defendants breached their duties, and their negligent conduct was the proximate cause of the severe and permanent burn injuries suffered by the Plaintiffs.

86.    As a direct and proximate result of NutriBullet Defendants' negligence, the Plaintiffs were caused to suffer severe burn injuries and damages.

**WHEREFORE,** Plaintiffs demands judgment against Defendants, their agents, servants, borrowed servants, workmen and/or employees, jointly and/or severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, costs and such other further relief the Court shall deem appropriate.

## <u>COUNT THREE – BREACH OF WARRANTY</u>

## <u>SCOTT COPELAND, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF MINOR-PLAINTIFF STEPHEN COPELAND v. NUTRIBULLET DEFNEDANTS</u>

87.    Plaintiffs adopts and realleges paragraphs 1-65 as previously set forth in this Complaint as if fully set out herein.

88.    The NutriBullet Defendants impliedly warranted that the subject NutriBullet Blender was reasonably fit and suitable for the purpose for which it was intended to be used. Plaintiffs aver that the NutriBullet Defendants breached said implied warranties in that the subject NutriBullet Blender was not reasonably fit and suitable for the purposes for which it was intended

to be used but, to the contrary, the subject NutriBullet Blender was defective and in an unsafe condition, as described herein. The Plaintiffs further aver that as a proximate result of the aforesaid breach of warranties by the NutriBullet Defendants, he suffered severe and traumatic burn injuries.

89.    The aforesaid wrongful conduct of the NutriBullet Defendants proximately caused both Plaintiffs' severe and permanent injuries.

**WHEREFORE,** Plaintiffs demands judgment against Defendants, their agents, servants, borrowed servants, workmen and/or employees, jointly and/or severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, costs and such other further relief the Court shall deem appropriate.

<u>**COUNT THREE – LOSS OF CONSORTIUM**</u>

<u>**SHONDA CORBETT v. NUTRIBULLET DEFENDANTS**</u>

90.    Plaintiff incorporates by reference herein the allegations set forth in the other paragraphs of this Complaint, inclusive, as if set forth at length.

91.    At all times material hereto, Plaintiff, Maria Martinez-Tapia, is the wife of Plaintiff, Julio Garcia Carrasco.

92.    As a result of the injuries suffered by her husband, Plaintiff, Maria Martinez-Tapia has and will in the future suffer the loss and deprivations of the usual services, society and consortium of her husband and has been required to provide special services and care to him.

**WHEREFORE,** Plaintiff demands judgment against Defendants, their agents, servants, borrowed servants, workmen and/or employees, jointly and/or severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, costs and such other further relief the Court shall deem appropriate.

**STAMPONE O'BRIEN
DILSHEIMER HOLLOWAY**

By:_____/S/_____

     J.B. Dilsheimer, Esquire

     Sean McMonagle, Esquire

     Atty ID Nos. 66614 &312714

     500 Cottman Avenue Cheltenham

     (p) (215) 663-0400

     (f) (215) 663-9112

     Attorneys for Plaintiffs

21